IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KIRT W. CLAYTON, et al | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CHILDREN'S CHOICE, et al | : | NO. 09-5727 |

## MEMORANDUM OPINION

Savage, J.                                                                                                                            August 18, 2010

This action centers around the state court proceedings involving the custody of Marc Clayton, a four-year old who has been in foster care since December 4, 2006. Pursuant to a court order issued after he was found dependent, Marc was placed in the custody of the Philadelphia Department of Human Services ("DHS") which arranged his placement with a foster parent through its service provider, Children's Choice, Inc. The plaintiffs, Marc's maternal grandfather and his wife, have unsuccessfully sought to participate in the proceedings.

Frustrated by their perceived inability to be heard in Family Court, the Claytons instituted this *pro se* federal civil rights action, alleging "illegal adoption, human trafficking, financial incentive" and "kidnaping" for financial gain. Implicit in their allegations is a claim that the defendants engaged in conduct calculated to generate financial benefit. They contend that the defendants violated their rights under the Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Amendments. They ask the court to "nullify the illegal adoption for profit scheduled 10/13/09," and award monetary damages.

Named as defendants are: Children's Choice, Inc., the service provider with which DHS has a contract to place and monitor dependent children in foster care; Drs. Bill and Carolyn Eberwine, the "owners" of Children's Choice; Honorable Kevin Dougherty, Administrative Judge of Family Court; Honorable Margaret T. Murphy, Supervising Judge of Family Court; Judges Charles Cunningham and Paula Patrick of the Family Court; Anne Marie Ambrose, Commissioner of DHS; Dell Meriweather, Deputy Commissioner of DHS;

and three other DHS employees.[1]

The alleged conduct of the defendants varies. The Claytons contend that the Children's Choice defendants kidnapped Marc, engaged in "human trafficking for profit, fraud and multiple civil rights violations." They charge the judicial defendants, except Cunningham who is not referred to in the complaint other than in the caption, with "administrative negligence, incompetence or deliberate complicity," and the DHS defendants with "negligent or fraudulent administration."

All defendants have moved to dismiss the complaint. They assert that the *Rooker-Feldman* doctrine deprives the federal court of subject matter jurisdiction. The judicial defendants and the DHS defendants also contend that the domestic relations exception to federal jurisdiction raises a jurisdictional bar. In their motion, the judicial defendants also argue that judicial immunity bars this action against them. Alternatively, they urge that if the adoption proceedings are ongoing,[2] we should abstain.

In addition to raising a *Rooker-Feldman* argument, the Children's Choice defendants and the DHS defendants argue that the complaint is factually and legally insufficient and fails to meet the *Twombly* and *Iqbal* pleading standard. The Children's Choice defendants also contend that there is no constitutionally protected interest forming the basis for a constitutional violation because grandparents have no protected interest in dependency proceedings. They also assert that because they acted pursuant to court orders, quasi-judicial immunity applies, shielding them from this action.

We conclude that neither the *Rooker-Feldman* doctrine nor the domestic relations exception deprives the federal court of subject matter jurisdiction. However, under the most liberal reading of the complaint, the Claytons fail to make out a viable § 1983 case against any of the defendants. As grandparents, the Claytons do not have a protected

---

[1] Defendants Children's Choice, Inc., and the Eberwines are collectively referred to as the "Children's Choice defendants"; the defendants Dougherty, Murphy, Patrick and Cunningham, as the "judicial defendants"; and the defendants Ambrose, Meriweather and the other DHS employees, as the "DHS defendants."

[2] At oral argument, the judicial defendants clarified that there are no pending adoption proceedings.

liberty interest in the adoption of Marc, a necessary element forming the basis for a substantive due process claim. Even if they had stated a § 1983 cause of action, judicial immunity shields the judicial defendants. Therefore, the motions to dismiss will be granted.

## Legal Standard

The jurisdictional challenges are brought under Fed. R. Civ. P. 12(b)(1); and the motions to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). The standards are similar, but not identical.

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Additionally, the plaintiffs' *pro se* pleadings must be considered deferentially, affording them the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). In light of these standards, we shall accept as true the facts as they appear in the plaintiffs' complaint and draw all possible inferences in their favor.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). There must be enough factual content from which we can draw a reasonable inference that the defendant is liable. In other words, the claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 570. To reach this point in the analysis, we only consider those legal conclusions that are supported by the factual allegations and disregard those that are not.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) attacking the court's jurisdiction is treated similarly to a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). However, a jurisdictional motion challenging the factual

underpinnings of a court's jurisdiction under Rule 12(b)(1) requires less deference to the plaintiff's complaint. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). Because a "factual attack" in a Rule 12(b)(1) motion addresses the court's power to hear the case, there is no presumption of truthfulness and we may consider materials outside the complaint to determine whether the exercise of federal jurisdiction is proper. *Id*. at 139 and 145.

The plaintiff has the burden of persuading the court that it has jurisdiction. *Gould*, 220 F.3d at 178. However, consistent with the deferential standard, we shall keep the Claytons' *pro se* status in mind when we examine the facts relevant to subject matter jurisdiction under Rule 12(b)(1). *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 n. 16 (3d Cir. 1977)) (noting that there is a flexible form of the jurisdictional inquiry at the trial court level).

We start with the jurisdictional challenge. If we lack jurisdiction, we can not reach the adequacy of the complaint under *Twombly*. If jurisdiction exists, we proceed to an evaluation of the complaint to determine whether the Claytons have stated a cause of action entitling them to relief.

### *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars a federal court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In short, a federal district court lacks subject matter jurisdiction over an action in the nature of an appeal seeking to reverse a state court decision. *See id*. at 293.

*Rooker-Feldman* deprives a federal court of jurisdiction where either: (1) the federal claim was litigated in state court before the federal action was filed; or (2) the federal claim is so inextricably intertwined with the state adjudication that granting federal relief can only be predicated upon a conviction that the state court was wrong. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009). A federal claim is inextricably intertwined with a state court

4

adjudication when, to grant relief, the federal court must either determine that the state court judgment was erroneously entered or take action that would negate the state court judgment. *Id*. (quoting *In re Knapper*, 407 F.3d at 580). Thus, a federal court may not entertain a claim that would nullify, if relief were granted, a state court's order. *In re Knapper*, 407 F.3d at 581.

*Rooker-Feldman* does not bar a federal court from deciding constitutional claims by persons who were not parties to the state court litigation, even if they could be considered in privity with a named party. *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Nor is a non-party in the prior action precluded from relitigating issues that were decided merely because he did not intervene. *Valenti v. Mitchell*, 962 F.2d 288, 298 (3d Cir. 1992). (citing *Chase National Bank v. City of Norwalk*, 291 U.S. 431 (1934)).

There has not been any judgment in state court. Adoption proceedings are not pending. There is no final decision that would be affected by a federal court's ruling. In any event, the Claytons are not "state court losers" subject to the *Rooker-Feldman* bar. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). They were not parties to the proceedings. Nor, as we shall see, could they have been.

A similar situation was presented in *Mullins v. State of Oregon*, 57 F.3d 789 (9th Cir. 1995). In *Mullins*, grandparents (one by blood and one by marriage, as in this case) originally sought § 1983 relief from the district court, alleging that the state's Children's Services Division had violated their procedural and substantive due process rights when it did not grant them a hearing on their petition to adopt their grandchildren. The defendants in *Mullins*, like the defendants here, argued that the district court lacked subject matter jurisdiction because the action was tantamount to a review of the juvenile court's dismissal of the adoption petition. On appeal, the Ninth Circuit found that *Rooker-Feldman* did not apply and that the district court had jurisdiction to hear the grandparents' constitutional claim.

The Ninth Circuit acknowledged that a federal district court could not review the final determination of a state court, even when there are federal constitutional issues involved. But, it concluded that the Mullinses did not ask the federal court to review a final

5

determination of any state court. Instead, they made a due process challenge to the state's treatment of their claim to adopt their grandchildren.

The *Mullins* court found that the state court had not and could not have considered the constitutional claim. Consequently, the due process claim was not "inextricably intertwined" with the state court's dismissal of the adoption petition. Therefore, it held that the district court had subject matter jurisdiction. *Id*. at 792 (citations omitted).

The Claytons are in the same position as the Mullinses were. As grandparents, they challenge the Family Court's failure to afford them due process in the Family Court proceedings. This action raises a federal question of constitutional dimension that was not presented and considered in the Family Court. Thus, the *Rooker-Feldman* doctrine does not preclude the exercise of subject matter jurisdiction because it is inapplicable.

**Domestic Relations Exception**

The judicial defendants and the DHS defendants also argue that the domestic relations exception deprives the federal court of jurisdiction. Their reliance on *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004) is misplaced. In that case, while recognizing such an exception when it held that a father lacked prudential standing to bring an action in the federal court challenging the constitutionality of a school district policy, the Supreme Court clearly stated that its holding did not rest on the domestic relations exception or the abstention doctrine. *Id.* at 13 n.5.

The domestic relations exception operates to divest "federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The exception applies only in federal diversity cases. It does not apply to federal question cases brought under 28 U.S.C. § 1331. *McLaughlin v. Parnsky*, 876 F.2d 308, 312 (3d Cir. 1989) (quoting *Flood v. Braaten*, 727 F. 2d 303, 308 (3d Cir. 1984).

The Claytons do not rely on diversity jurisdiction. Rather, they impliedly invoke federal question jurisdiction under 28 U.S.C. § 1331. Accordingly, the domestic relations exception does not apply.

### *Younger* Abstention

Although there is no pending adoption proceedings, there are ongoing dependency proceedings. However, the Claytons were not parties to the dependency proceedings. Nor have they asserted that they have filed a petition or notice of intent to adopt Marc.[3] "[W]here the plaintiff in a federal action is not a party to the state proceeding, *Younger* concerns about federal adjudication do not arise." *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 177 (3d Cir. 1987) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975)). Thus, it is not necessary to address the abstention argument.

### Section 1983 Constitutional Claim

The *Mullins* case gets the Claytons over the jurisdictional hurdle. But, it creates an insurmountable obstacle to a viable § 1983 cause of action. Unlike parents vis-a-vis their child, grandparents have no protected liberty interest in the care, custody and management of their grandchildren. *Mullins*, 57 F.3d at 797. Accordingly, grandparents have no liberty interest entitled to constitutional protection under the Fourteenth Amendment. *Gordon v. Lowell*, 95 F.Supp.2d 264, 269 (E.D. Pa. 2000).

Under Pennsylvania law, grandparents do not have standing to participate in dependency hearings. *In re D.S. and M.S.*, 979 A.2d 901, 905 (Pa.Super. 2009). Only three classes of persons may participate in dependency proceedings: (1) the parents; (2) the legal custodian; and (3) the person whose care and control of the child is at issue at the time of the hearing. *Id*. at 904 (citing *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super. 2006)). Dependency proceedings are closed to all others. 42 Pa. C.S.A. § 6336(d). Thus, unless the grandparents have custody of their grandchild at the time, they lack standing to attend and participate in the dependency hearing.

Grandparents do have a right to seek custody of and to adopt a grandchild. They are eligible as a permanent placement source and as adoptive parents. Because the Claytons challenge the dependency process and not the adoption process, we are not

---

[3] At oral argument, Barbara Clayton advised that no notice of intention to adopt or petition to adopt Marc had been filed.

confronted with a due process challenge brought by one having standing.[4]  Therefore, the Claytons cannot state a cause of action based on a federal constitutional violation.

### Judicial Immunity

Judges enjoy absolute immunity for judicial acts performed in cases over which they have jurisdiction. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768-69 (3d Cir. 2000); *Feingold v. Hill*, 521 A.2d. 33, 36-37 (Pa.Super. 1987).  Even legal or factual error, personal malice, or the performance of an act in excess of jurisdiction will not remove the cloak of judicial immunity.  *Gallas*, 211 F.3d at 769; *Feingold*, 521 A.2d at 36.

The protection of judicial immunity is lost only when a judge performs a non-judicial act or acts in a "clear absence of all jurisdiction . . . ." *Gallas*, 211 F.3d at 768-69 (citations omitted); *Feingold*, 521 A.2d at 36.  Evaluating whether a judge has acted in the clear absence of all jurisdiction focuses on the nature of the act and the expectations of the parties.  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Judicial acts are distinguished from mere administrative acts.  *Gallas*, 211 F.3d at 769-70.

The Claytons sue the judicial defendants in their "individual capacit[ies] and as a culpable accessory to Fraud, Illegal Adoption and Kidnapping due to administrative negligence."  In the complaint, they further allege "repeated and prolonged civil rights violations inflicted by administrative negligence, incompetence or deliberate complicity" of Dougherty, Murphy and Patrick.  *Compl.* at 5.  They do not ascribe any acts or omissions to Cunningham.

The Claytons do not allege that the judicial defendants did anything that was not within the performance of their judicial duties.  Similarly, nowhere is it alleged or suggested that they adjudicated without jurisdiction.  Thus, the claims against the judicial defendants

---

[4] It appears that this action found its way here as a result of a lack of communication and a misunderstanding.  The Claytons, who were not represented by counsel, did not understand why they were not permitted to participate in a matter that significantly impacted the welfare of their grandchild.  Had they been informed that the law prohibited their participation at the dependency hearings, but they could petition for adoption and how to do it, it is unlikely they would have complained and filed this action that involved many parties and attorneys.

To avoid confusion and an appearance of arbitrariness in the future, Family Court may consider drafting a notice to be given to grandparents who appear at a dependency hearing.  The notice could advise them of the legal restrictions on who may participate in the hearing, their rights to seek adoption, how to do it, where to get the forms, and a list of lawyer referral services.

are barred by the doctrine of judicial immunity.

## Quasi-Judicial Immunity

The Children's Choice defendants contend they are entitled to quasi-judicial immunity. Because they placed Marc with a foster parent pursuant to a court order that was issued by a judge cloaked with immunity, they argue that judicial immunity should also cover them.

Absolute judicial immunity extends to officials who perform quasi-judicial functions or who act pursuant to a judge's instructions. *See Forrester v. White*, 484 U.S. 219, 225 (1988) (extending judicial immunity to officials "who perform quasi-judicial functions"); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects" the judge); *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989) (holding that "court personnel are entitled to absolute quasi-judicial immunity for their alleged acts . . . pursuant to the judge's instructions."). In § 1983 actions relating to custody proceedings, this quasi-judicial immunity has been extended to guardians *ad litem*, *Dornheim v. Sholes,* 430 F.3d 919, 925 (8th Cir. 2005), and child custody conference officers. *Logan v. Lillie*, 728 A.2d 995 (Pa. Commw. 1999), *appeal withdrawn*, 559 Pa. 708 (1999).

DHS was ordered by the court to place Marc and monitor his placement. It fulfilled its obligation by having Children's Choice perform those tasks. The dependency court, while delegating its supervision to DHS and Children's Choice, retained jurisdiction over Marc's placement. In short, DHS and its agents, Children's Choice, acted as arms of the dependency court which had declared Marc dependent. Thus, they are entitled to immunity.

## Conclusion

Because the Claytons do not have a protected liberty interest in the dependency proceedings involving their grandchild, they can not state a § 1983 cause of action. Nor have they alleged any facts that permits an inference that the defendants are liable under

9

any other cognizable theory.  Therefore, the motions to dismiss will be granted.